# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1264 | **DATE** | 8/24/2000 |
| **CASE TITLE** | William Glennon vs. Village of South Barrington | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 26 Sept. 00 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss is granted in part and denied in part. Counts II and IV are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 25 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 AUG 25 AM 7: 54 | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED
AUG 24 2000
Judge Harry D. Leinenweber
U.S. District Court
DOCKETED
AUG 25 2000
AUG 25 2000

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GLENNON,<br><br>    Plaintiff,<br><br>v.<br><br>VILLAGE OF SOUTH BARRINGTON,<br>an Illinois Municipal<br>Corporation,<br><br>    Defendant. | Case No. 00 C 1264<br><br>Judge Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Before the court is Defendant the Village of South Barrington's (the "Village's") motion to dismiss. Plaintiff William Glennon brings this action alleging six causes of action arising out of his discharge as a Village police officer. The Village moves to dismiss Glennon's federal causes of action, Counts I, II and IV, which arise under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621, *et seq.* and the Due Process Clause of the Fourteenth Amendment.

**BACKGROUND**

In his Complaint, Glennon alleges the following facts. The Village hired Glennon in 1981 to serve as a part time police officer. On March 8, 1995, Glennon was upgraded to a full time position and, pursuant to an oral agreement, was to serve a five-year term. Glennon began to complain to the police chief about the Department's

morale, however. On March 11, 1999, the Village adopted an ordinance amending § 5-1-7 of the Village Code ("§ 5-1-7").

Section 5-1-7 set a mandatory retirement age for police officers at 65, unless the police officer otherwise demonstrates physical and mental fitness "pursuant to regulations to be promulgated by the United States Secretary of Health and Human Services." Compl. ¶ 11. The Village passed § 5-1-7 under § 623(j) of the ADEA, which offers employers a public safety exemption, permitting them to set a mandatory retirement age for police officers and firefighters. 29 U.S.C. § 623.

Glennon was 66 years old when § 5-1-7 was passed. He was the only police officer by at least ten years in age who was terminated under the ordinance. Glennon repeatedly requested that he be offered an opportunity to demonstrate his physical and mental fitness and utilize the exception to § 5-1-7. However, when the ordinance was passed no fitness tests or guidelines had been passed by the Secretary for Health and Human Services. Glennon asserts that the passage of § 5-1-7 was carefully crafted to eliminate him without providing him an opportunity to show his mental and physical fitness and therefore the Village's enactment of § 5-1-7 was a subterfuge to evade the ADEA.

## **DISCUSSION**

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations."

*Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429-30 (7th Cir. 1996). The purpose of a motion to dismiss is to test the sufficiency of the Complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the Complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World*, 73 F.3d at 1428.

The Village first argues that based upon the Supreme Court's ruling in *Kimel v. Florida Board of Regents*, -- U.S. --, 120 S.Ct. 631 (2000), Glennon cannot sue a local government under the ADEA. The Village contends that according to *Kimel*, Congress based its authority to enforce the ADEA against state and local governments on § 5 of the Fourteenth Amendment. In *Kimel* the Supreme Court said that Congress did not validly exercise its power under § 5 because it made the scope of the substantive requirements of the ADEA indiscriminate and there is a lack of evidence that the States widely discriminate based on age. *Kimel* 120 S.Ct. at 649. The Supreme Court held that since the use of Section five was invalid, Congress' abrogation of the States' sovereign immunity is likewise invalid. *Id.*

The Village acknowledges that local governments are not subject to Eleventh Amendment sovereign immunity. Nevertheless, the Village argues that since Congress used § 5 as the direct vehicle by which it enforces the ADEA against the local governments, under *Kimel*, the ADEA is no longer enforceable against local governments. The defendant therefore divides the *Kimel* ruling into two parts: the "not a valid exercise of Congress' power under § 5" part and the invalidity of "the ADEA's purported abrogation of the States' sovereign immunity" part.

The Seventh Circuit has indirectly spoken on this issue. In *Conley v. Village of Bedford Park*, -- F.3d --, 2000 WL 703806, *7-8, n.7 (7th Cir. May 31, 2000), the Seventh Circuit stated:

> In *Erickson v. Board of Governors of State Colleges and Universities*, 207 F.3d 945 (7th Cir.2000), and *Stevens v. Illinois Department of Transportation*, 210 F.3d 732 (7th Cir.2000), we applied the framework of *Kimel v. Florida Board of Regents*, -- U.S. ---, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), to an ADA case. In *Erickson*, the court held that the ADA did not "'enforce' the Fourteenth Amendment," and therefore, like the Age Discrimination in Employment Act, did not validly abrogate Eleventh Amendment immunity. 207 F.3d at 952. The Eleventh Amendment, however, applies only to the states, and not to municipalities. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." (citations omitted)). It is clear that, under the Illinois Municipal Code, the Village of Bedford Park is considered a municipality, and not an arm of the state. *See* 65 Ill. Comp. Stat. Ann. 5/1-1- 2(1) (West 1996) ("'Municipal' or 'municipality' means city, village, or incorporated town in the State of Illinois,. . . ."). Consequently, the Village may be sued in federal court for alleged violations of the ADA.

In essence, in *Erickson* and *Stevens*, the Seventh Circuit, by means of *Kimel*, held that the ADA does not abrogate states' sovereign immunity. However, in *Conley*, as cited above, the Seventh Circuit applied the ADA to local governments, notwithstanding the *Kimel* holding. *Conley* at *8. Therefore, under the reasoning of the Seventh Circuit, the ADEA must also be applicable to local governments.

Next, the Village argues that Count I fails to state a claim because the Village's retirement plan is not a subterfuge to evade the purposes of the ADEA, and the Village is exempt from liability under § 623(j).

Section 623(j) is a public safety exemption to the ADEA, exempting state and local governments with age-based restrictions for firefighters and police officers. *See* 29 U.S.C. 623(j), *Kopec v. City of Elmhurst*, 193 F.3d 894, 897 (7th Cir. 2000). In order to qualify under § 623(j), the employee's discharge must be "pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter." 29 U.S.C. § 623(j)(2). Count I alleges that the Village enacted § 5-1-7 as a subterfuge to evade the ADEA.

According to the Seventh Circuit in *Kopec*, a bona fide plan is one "that is genuine and pursuant to which actual hiring decisions are made." *Kopec* 193 F.3d at 901. In this case, according to the plain language of § 5-7-1, the Village enacted § 5-1-7 pursuant to the "Village's bona fide retirement and pension plans." According to

the Village, its retirement and pension plans are adopted pursuant to Article 3 of the Illinois Pension Code. See 40 ILCS 5/3-101.

Glennon does not dispute that the retirement decisions are made pursuant to the plan and the plan does indeed pay benefits. See *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (Documents attached to motion to dismiss considered if they are referenced in plaintiff's complaint and central to plaintiff's claim). Glennon does argue that § 5-7-1 should be considered as a separate plan than the Village's pension plan; however, Glennon cites no case law in support of his argument, and the Village's plan is specifically referenced in § 5-7-1. Therefore, the retirement age amendment to § 5-7-1 was adopted pursuant to a bona fide retirement plan.

In that the Village's plan and the Ordinance are not considered separate "plans," the court next addresses whether Glennon has stated a claim, sufficient to survive a motion to dismiss, that the enactment of § 5-7-1 and his subsequent discharge is a "subterfuge to evade the purposes of this chapter." 29 U.S.C. § 623(j)(2). In *Kopec*, the Seventh Circuit noted that there is "little case law on the subject" but that a plan will not be considered a subterfuge "so long as the age criterion pre-dates the ADEA (or its extension to the employees of state and local governments)." *Kopec* 193 F.3d 901. In this case, the age requirement adopted in § 5-7-1 does not predate the ADEA.

The timing of the adoption of § 5-7-1 is not the only factor which saves Glennon's claim, however. According to the Supreme Court, a subterfuge is a "scheme, plan, stratagem, or artifice of evasion." *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158 (1989).

According to 29 U.S.C. § 621(b), it is "the purpose of this chapter to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." In his Complaint, Glennon alleges that the Village enacted § 5-1-7 using § 623 as a pretense to discriminate against him based upon his age. *See, e.g.*, Compl. ¶ 20. Therefore, under the liberal pleading standards of the federal courts, Glennon has stated a claim in Count I.

In Count II, Glennon argues that § 5-1-7 is void because it violates the ADEA. Glennon argues that Congress enacted § 623 (j) to permit mandatory retirement plans based on fitness and ability as a police officer, not just age. Section 623(j)(1) provides an exemption to the ADEA, provided that "an employer has complied with Section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996." Section 3(d)(2), now Public Law 104-208 states,

> Effective on the date of issuance of the regulations described in paragraph (1), any employer seeking such exemption with respect to a firefighter or law enforcement officer who has attained such age shall provide to each firefighter or law enforcement officer who has attained

such age an annual opportunity to demonstrate physical and mental fitness by passing a test described in paragraph (1), in order to continue employment. PL 104-208, 1996 HR 3610, 110 Stat 3009, 3009-25.

Section (2) clearly references the "test" depicted in Section (1). Section (1) reads, "After issuance of the advisory guidelines described in subsection (c), the Secretary shall issue regulations identifying valid, nondiscriminatory job performance tests that shall be used by employers seeking the exemption described in Section 4(j) of the Age Discrimination in Employment Act of 1967 with respect to firefighters or law enforcement officers who have attained an age of retirement described in such Section 4(j)." PL 104-208, 1996 HR 3610, 110 Stat 3009, 3009-25.

Section 5-1-7 reads, that Village Police Officers will be discharged at 65 unless "otherwise demonstrating physical and mental fitness pursuant to regulations to be promulgated by the United States Secretary of Health and Human Services." Compl. ¶ 11.

According to Section 1 of the Public Law, the Secretary had until September 2000 in order to issue the performance tests which are outlined in Section 2 and are to be used to qualify for the exemption in § 623(j). The plain language of Section (1) reads that employers "shall" use the performance tests issued by the Secretary. See Anderson v. Yangkau, 329 U.S. 482, 485 (1947) (The term "shall" ordinarily is mandatory and not precatory.).

Glennon argues that § 5-1-7 violates the ADEA because the Village did not promulgate fitness tests to correspond with the

mandatory retirement age of 65. Hence, if § 5-1-7 is void, so is § 623(j) of the ADEA because Congress also promulgated § 623(j) without specific fitness tests to go immediately into effect. Although not analyzing the performance test, the Seventh Circuit has analyzed cases under 29 U.S.C. § 623(j). *See Kopec v. City of Elmhurst*, 193 F.3d, 894; *see also McCann v. City of Chicago*, 968 F.2d 635, 637 (7th Cir. 1992). This court declines to find that § 623(j) of the ADEA and consequently § 5-7-1 violate the ADEA. Therefore, the motion to dismiss Count II is granted for failure to state a claim upon which relief can be granted.

In Count IV, Glennon alleges that Section 5-1-7 violates the Due Process Clause of the Fourteenth Amendment because it is vague and irrational.

According to the Supreme Court in *Kimel*, age is not a suspect class and a statute need only be rational. *Kimel* 120 S.Ct. at 645. The Supreme Court stated,

> Under the Fourteenth Amendment, a State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interest. The Constitution does not preclude reliance on such generalizations. That age proves to be an inaccurate proxy in an individual case is irrelevant. 120 S.Ct. at 646.

In this case, although Glennon has at least stated a claim in Count I that the Village violated the ADEA when enacting § 5-1-7 as a subterfuge to discriminate against him, Glennon's allegations do not rise to the level of sufficiently alleging a due process violation because they fail to allege how § 5-1-7 is not rationally

- 9 -

related to the Village's legitimate purpose as a whole, to comply with § 623(j) and ensure the public's safety. After all, "the constitutionality of state classifications on the basis of age cannot be determined on a person-by-person basis." *Kimel* at 647.

In arguing that section is irrational, Glennon relies on *Central States Pension Fund v. Midwest Motor Express*, 81 F.3d 799, 806 (7th Cir. 1999). In *Central States*, the Seventh Circuit addressed an economic regulation. *Id.* According to the court in *Central States*, an "[e]conomic regulation will be upheld, even without any express findings or legislative history, if there is 'any reasonably conceivable state of facts that could provide a rational basis' for the legislation." *Id.* (citing *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).

In this case, § 5-1-7 itself provides a rational explanation for its existence. *See* Compl. Ex. 2, *Section 1*. For example, the Ordinance reads, "[i]t is essential for the preservation for the peace, order and safety of the residents of the Village of South Barrington that each member of the Department of Police have the necessary physical capabilities to properly carry out his or her duties." *Id.* Glennon has failed to state a claim upon which relief could be granted that § 5-1-7 is not rationally related to legitimate interests and violates the Due Process Clause because he has failed to state how the section is not rationally related to the Village's stated goals, for example, of public safety. In other words, even if § 5-1-7 relies on Glennon's "age as a proxy," Glennon has not stated

a claim that § 5-1-7 is not, nonetheless, relevant to the Village's stated interest. *Kimel* 120 S.Ct. at 646. Therefore, Count IV is dismissed.

### CONCLUSION

Therefore, for the foregoing reasons, the Defendant's Motion to Dismiss is granted in part and denied in part. Counts II and IV are dismissed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: *August 24, 2000*